UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON L. SANDERS,

        Plaintiff,        Case No. 1:07-cv-360

v.        Honorable Janet T. Neff

UNKNOWN BACHUS et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On August 8, 2007, the court dismissed some of the Defendants and ordered service on Defendants Bachus, Guzikowski, Sanders and Schilling[1]. On October 15, 2007, Defendants Bachus, Guzikowski and Sanders filed a motion for summary judgment for failure to exhaust administrative remedies. The court granted this motion on December 30, 2008. Defendant Schilling has now filed a motion for summary judgment (docket #51) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket #55) on March 6, 2009. Upon review, I recommend that Defendant Schilling's motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted.

        Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

---

[1] Also referred to by Plaintiff as Scheiling.

law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit

repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Ionia Maximum Correctional Facility, though the actions he complains of occurred while he was housed at the Oaks Maximum Correctional Facility (ECF). In his verified *pro se* complaint, Plaintiff alleges that Defendants Guzikowski, Bachus, Schilling and Sanders mistreated him in violation of his rights under the Eighth Amendment. He also alleges that Defendants' actions were taken in retaliation for Plaintiff's involvement in certain proceedings involving the Michigan Protection and Advocacy Service (MPAS).

Specifically, Plaintiff alleges that on December 18, 2006, Defendant Guzikowski made verbal threats to Plaintiff while escorting him to the yard and, once they arrived at the yard, Defendant Guzikowski grabbed Plaintiff by the neck and dragged him back to his cell from the yard. (Compl. at 2, docket # 1.)[2] Plaintiff also alleges that on January 23, 2007, Defendants Bachus and Schilling assaulted Plaintiff in his cell after escorting him from the yard. (*Id.* at 4.) Plaintiff states that Defendants Bachus and Schilling pulled on the tethers attached to his handcuffs, playing "tug-of-war," and slammed his hands in the food slot causing Plaintiff to yell in pain. (*Id.*) Plaintiff further

---

[2]For clarity and ease, the Court will use the page number assigned to Plaintiff's complaint by CM/ECF.

alleges that Defendants Bachus and Schilling then tied Plaintiff to the upper door handle and left him hanging in that position for two to three hours. (*Id.* at 6.) Plaintiff alleges that he was taunted by Defendants Bachus and Schilling for the following week. Plaintiff also alleges that he sent "kites" to and spoke with Defendant Sanders about the alleged harassment and abuse. (*Id.* at 4, 6.) Plaintiff alleges that Defendant Sanders violated his Eighth Amendment rights by failing to address the harassment Plaintiff was enduring. (*Id.* at 7.)

Defendant Schilling claims that he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. At the time that Defendants Bachus, Guzicowski, and Sanders filed their motion for summary judgment, Defendant Schilling had not yet been served. Defendant Schilling now seeks summary judgment for the same reasons the court granted summary judgment to Defendants Bachus, Guzicowski, and Sanders.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases. *Woodford*, 548 U.S. at 88. In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ." *Id.* at 848 (citation omitted; emphasis in original). In habeas, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford*, 548 U.S. at 93. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and

independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[3], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.

---

[3]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

As noted by the undersigned in the December 10, 2008, report and recommendation, Plaintiff filed a total of four grievances that may be relevant to the complaint. Three of those grievances were filed directly to Step III: Direct Grievance Nos. 201457-17a, 201459-28i, and 201458-26a. Plaintiff also filed Grievance No. ECF-07-05-3214-17a at Step I and appealed it through Step III. In Direct Grievance No. 210457-17a, Plaintiff complained that Defendant Guzikowski deprived him of his yard privileges on December 18, 2006. Plaintiff pressed his emergency button when he realized that he had been overlooked. Plaintiff ultimately was issued a misconduct ticket for using the emergency button. Upon review, the Step III respondent returned the grievance to Plaintiff for filing at Step I. Plaintiff did not file the grievance at Step I.

Because the Step III administrator refused to address the grievance at Step III and directed Plaintiff to file it at Step I, Direct Grievance No. 210457-17a did not serve to exhaust any issue. Moreover, this grievance did not name Defendant Schilling. Therefore, even if it had been

7

properly filed, it would not have sufficed to exhaust Plaintiff's administrative remedies as to Defendant Schilling.

In Direct Grievance No. 201459-28i, Plaintiff claimed that Defendant Guzikowski made threatening comments and then grabbed Plaintiff by the neck and pushed him from the yard to his cell. The Step III respondent rejected the grievance because Plaintiff did not first attempt to resolve the issue with involved staff prior to writing the grievance. The grievance was returned to Plaintiff without action and without direction to file at Step I. In addition, this grievance did not name Defendant Schilling.

Direct Grievance No. 201459-28i does not serve to exhaust any claim because it was not properly filed. In *Woodford*, the Supreme Court held that the exhaustion requirement was not satisfied when a grievance was dismissed on the grounds that the prisoner failed to comply with the procedural requirements of the grievance policy because the grievance process had not been properly exhausted. 548 U.S. 81. In this case, MDOC Policy Directive 03.02.130 ¶ R required:

> In an effort to resolve grievable issues as soon as possible, prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control. If the complaint is not resolved, the grievant may file a Step I grievance.

*Id.* Because Plaintiff did not comply with the procedural requirements of the policy and because the Step III reviewer enforced the default, the grievance was not properly exhausted. *See Hicks,* 377 F.3d at 551 (for procedural default to bar review, it must have been relied upon by the state); *Lancaster*, 324 F.3d at 436-37 (same).

Plaintiff filed a third grievance directly to Step III: Direct Grievance No. 201458-26a. In that grievance, Plaintiff alleged that he was denied yard time for being in possession of contraband

(cough drops), and that when he got back to his cell, Defendants Bachus and Schilling slammed his hands and arms in the food slot and tied the tethers to a doorknob, leaving Plaintiff hanging for hours. Like Direct Grievance No. 201459-28i, Grievance No. 201458-26a was returned to Plaintiff for submission at Step I. Plaintiff did not refile the grievance at Step I as directed. Because the grievance was not addressed at Step III, it does not serve to exhaust any of Plaintiff's claims.

On May 25, 2007, Plaintiff filed Grievance No. ECF-07-05-3214-17a, in which he alleged that Corrections Officers Riggs and Homrich harassed him in retaliation for his cooperation with MPAS and interfered with his shower privileges. Plaintiff's grievance names only Officers Riggs and Homrich, neither of whom is a Defendant in this action.

As previously discussed, MDOC Policy Directive 03.02.130, ¶ T requires prisoners to name in the grievance "all those involved in the issue being grieved . . . ." *Id.* When a prisoner fails to name any individual in his grievance, the MDOC is immediately on notice of the prisoner's failure to provide the names of those who were involved and should reject the prisoner's grievance in the Step I, II and III responses under MDOC Policy Directive 03.02.130, ¶ T. If the MDOC does not reject the grievance for failure to name names, the grievance is considered properly exhausted as to all Defendants subsequently shown to have been involved. On the other hand, where, as here, a prisoner names at least some individuals in the grievance, the MDOC would have no reason to know that a prisoner would be suing different individuals until the prisoner filed his complaint. In that scenario, a defendant's first opportunity to raise the procedural rule is in his motion for summary judgment. Raising the procedural bar at that juncture therefore is adequate to invoke the procedural default. Because Plaintiff named only Officers Riggs and Homrich in his grievance, the grievance fails to exhaust Plaintiff's claims against any other individual. Because no Defendant was named in the grievance, the grievance fails to exhaust any claim against any named Defendant.

For the foregoing reasons, I recommend that Defendant Schilling's motion for summary judgment (docket #51) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: August 18, 2009

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).